UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | * | |
| | * | |
| VS | * | NO. 03-CR-10385-RGS |
| | * | |
| KIRK RINALDI | * | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The defendant, Kirk Rinaldi, hereby submits this Memorandum in support of his Motion to Suppress.

BACKGROUND

On January 30, 2002, John A. Mercer, Jr., Special Agent of the Bureau of Alcohol, Tobacco and Firearms, filed an Application and Affidavit for Search Warrant with a magistrate judge of the U.S. District Court for the District of Massachusetts seeking to search the "second-floor rear apartment of 534 Broadway, Everett, Massachusetts" ("apartment"). The affidavit accompanying the Application was 9 pages in length and contained 22 paragraphs. **(Ex. A)**

The search warrant was issued on January 30, 2002, and as indicated in the warrant's return, was executed on January 31, 2002. **(Ex. B)** [Note: An unsigned copy of the warrant return is enclosed as the exhibit because a duly signed copy of the search warrant return was not available to counsel. Defendant reserves the right to further address that issue if a signed return is not located or was not filed timely in court.] An Everett Police Department report of the search indicates the defendant was not located in the premises at the time of the search but that a warrant was to be sought for his arrest later from the Malden District Court. **(Ex. C)** A criminal complaint was issued from the

Malden District Court (Docket No. 0250CR0305) on February 1, 2002, against the defendant a result of the seized drug evidence at which time an arrest warrant issued. **(Ex. D)** The Commonwealth *nolle prossequed* the Malden District Court case on February 7, 2003. The within indictment was returned against the defendant on December 17, 2003. The defendant was arrested following the search at a different location and was incarcerated as a parole violator during the aforesaid period to the present time.

## DISCUSSION

The defendant submits that the facts set forth in S/A Mercer's Affidavit failed to establish the requisite foundation to establish probable cause for the issuance of the search warrant under either Massachusetts or federal law. The following observations must be noted at the outset: (a) this entire case rests upon the physical evidence seized as a result of the execution of the subject search warrant; (b) the entirety of the relevant facts supplied in the affidavit to support the probable cause necessary for the issuance of the subject search warrants came from information allegedly supplied by a single unnamed informant ("CI"), either to the affiant directly, but mostly to other law enforcement officers of the Woburn Police Department, who supposedly further relayed that information to the affiant; (c) information contained in the affidavit was the sole basis to ostensibly establish the CI's basis of knowledge and credibility/veracity; and (d) the magistrate judge of this court issued the subject search warrant based upon the Application and Affidavit that was presented to him. Stated alternatively, the search warrant issued in this case would not have been issued but for the magistrate judge's reliance on the critical facts contained in the affidavit which were attributed to the CI as their sole source.

The defendant submits a proper review of the subject affidavit requires a paragraph-by-paragraph analysis of its contents and, accordingly, the following is presented in that fashion.

**Paragraphs 1-5**. These five paragraphs only supply background information regarding affiant's personal background and his knowledge of the defendant's criminal history. No information is provided relating to facts regarding either the substantive offenses charged against the defendant in this indictment or to establish the basis of knowledge or credibility/veracity of the CI.

**Paragraphs 11-22**. These twelve paragraphs are replete with introductory statements that recite, "based on my training and experience," "according to records," or "based on the information contained in the foregoing paragraphs." In other instances, the affiant cites his having spoken to the defendant's parole officer, a postal inspector, Verizon personnel, and of having made observations of the subject building and of automobiles, and of having made telephone records checks, registry of motor vehicle checks. None of these recited facts, however, relate to or are corroborative of any intimate details of the charged offenses, the interior of the subject premises or any of the contents thereof. Also, none of these facts provided any support for either the reliability/veracity prong or the basis of knowledge prong relating to the unnamed CI.

**Paragraphs 6-10**. These five paragraphs, defendant submits, are the only ones that directly reference the CI in an apparent effort to establish his/her reliability/veracity and basis of knowledge. The defendant offers, however, for the reasons outlined below, that the facts presented in these paragraphs were deficient and inadequate, either individually or in their aggregate, to have been relied upon by the magistrate judge for the issuance of the search warrant. In only one paragraph (Pa ), was there an actual identification provided of a prior defendant who was allegedly arrested and convicted of a drug offense as a result of information supposedly obtained from the CI. That subject's arrest took place on September 15, 2000, by the Woburn Police (**Ex. E**). Additionally, the CI's

3

claimed observations in the instant case ("...third week of January 2002"), (Ex. A, Affidavit ¶ 9), which took place over 16 months later, by itself raises serious doubt as to the seasonableness efficacy of the information attributed to the CI that he/she provided in this case. On that basis defendant submits, there was an improper reliance placed on the earlier information to buttress CI's reliability/veracity in this case. More importantly, the substantive information that was a to the CI for the prior arrest and conviction on September 15, 2000, was clearly deceptive and seriously misrepresented to the court in the affidavit involved in this case and is addressed in under Paragraph 7 below. [Paragraphs 6-10 are intentionally addressed out of order below.]

Paragraph 8. This paragraph describes facts regarding observations of the building and to the subject apartment, facts readily available to any person entering the subject building, an certainly not corroborative of any intimate details of information provided by the CI. Other fa recited in this paragraph relating to defendant's children or brother also provide no consequen relevance to the offenses charged against the defendant or support the reliability/veracity or ba knowledge prongs to support the CI's information in any way.

Paragraph 9. This paragraph describes alleged observations made inside the apartment CI. The observations therein, the defendant submits, are inadequate to satisfy the *basis of kno* prong required of the CI because of what it fails to address. No explanation is provided about CI had any access to the subject premises. Why and under what circumstances was the CI in t premises? What was the CI's relationship to the subject apartment or the defendant? How dic access the subject apartment effected? Was the CI an invitee, a trespasser, or one who made a entry as an agent of law enforcement officers? Was the subject apartment actually used by the his/her own drug storage or other personal unlawful purposes? Were the premises being utiliz the CI as a direct owner or as a conspirator in the ownership, possession or use of the items he

4

was able to describe with apparent accuracy? The paragraph also fails to recite exactly how, on a single occasion ("during the third week of January 2002"), the CI was able to become privy to the observations attributed to him/her as referenced in the affidavit, such as having seen: "large caliber black pistol contained in a plastic gun box," "several clips and a silencer," "an "M-11 pistol," that the M-11 pistol is stored "under the pillow of his bed," and that the defendant "distributes heroin, cocaine and xanax pills." The precise descriptions by make and model of the weapons give rise to serious questions whether the CI had independent access to the premises for his/her own purposes, or could have invited law enforcement inside to provide those exact descriptions. It is also reasonable to conclude, given all of the "observations" the CI is alleged to have made, that many observations may have taken place at a time far distant in the past and were intentionally not referenced in the affidavit because such information would have been considered as unseasonably given. This are not frivolous questions, but are justifiably made by the fact that less than one week after the alleged observations were made "during the third week in January, 2002," the precise date for which was unexplainably not provided in the affidavit, but because at the time of the search just days later the following the "observed" items, the <u>M11, 9 mm. pistol</u>, <u>cocaine</u>, and <u>xanax pills</u> were not found in the premises and were not listed in the warrant return. **(Ex. B)**

<u>Paragraph 10</u>. This paragraph describes facts obtained from the CI which again are clearly of a non-consequential nature, such as the description of an automobile the defendant allegedly is driving and the telephone number at the subject address, facts which could easily be obtained through normal inquiries or investigative checks by law enforcement authorities without any assistance from the CI.

<u>Paragraph 6</u>. This paragraph offered the magistrate judge the affiant's own self-serving and conclusory statement that the CI in the instant case is reliable and trustworthy because he/she has provided "accurate, truthful, and reliable information in the past and continues to do so to the

present." The obvious questions are raised as to when, where and what "reliable information" the CI provide. Without specific information the statement, standing alone, lends nothing to establish the reliability/veracity prong needed for the CI.

    <u>Paragraph 7</u>. This four-sentence paragraph is the only one in the entire affidavit that makes a specific and direct reference to prior information allegedly provided by the CI that resulted in arrest and conviction of a drug defendant. The <u>first sentence</u> only summarily offers affiant's hearsay that the CI "provided reliable information to the Woburn Police leading to the arrests and convictions of several persons in the past." This simply repeats what was stated in paragraph 6. No names, offenses, or courts are provided so defense counsel was unable to investigate and corroborate allegation. In the <u>fourth sentence</u>, the affiant additionally states he is <u>personally</u> "aware of three other individuals who were arrested…and convicted in Malden District Court of state narcotics violation." This is another general repetition of claims stated in paragraph 6 and in the first sentence of this paragraph, but again, not one name or date is provided to allow defense counsel to investigate this allegation to determine its accuracy.

    As noted previously, the affidavit attributes to the CI only a single identifiable person, "Doreen DeLuca," who was arrested on "September 15, 2000," and convicted of drug offenses in the "Malden District Court." This information appears in the <u>second and third sentences</u> and is the only substantive information that was provided in the affidavit attempting to establish his/her credibility for past information having been provided to the Woburn Police. Defense counsel's investigation reveals, however, that these representations were inaccurate and either falsely or recklessly presented in the affidavit. The affidavit unequivocally stated that DeLuca was arrested because of information received from the CI. That was simply improperly referenced. Giving attribution to the CI for having provided the information to police authorities leading to DeLuca's arrest was untrue.

6

The Woburn Police stopped DeLuca while she was driving a motor vehicle on Septem... 15, 2000. The truth is, however, she was stopped at that time because **(a)** she was known to be o[perat]ing a motor vehicle after suspension of her driver's license **(Ex. E)**; **(b)** she was a known drug de[aler] and drug user; and, **(c)** because the police were aware of outstanding warrants for her arrest for pa[st m]otor vehicle violations and drug distribution charges. **(Ex. F)** After her arrest the police further ci[ted] DeLuca for possession of cocaine with intent to distribute. **(Ex. E)**

The affidavit states that DeLuca was convicted in the <u>Malden District Court</u> in April o[f 2]001. That is incorrect. DeLuca was convicted in the <u>Woburn District Court</u> (Docket No. 0053CR0[0]73). **(Ex. G)** Though not of critical consequence, this inaccuracy reveals the hazards in an affiant [rely]ing upon hearsay information received from third parties for his affidavit, even from other police [offi]cers, without seeking to confirm the information.

That the CI provided the requisite information to the Woburn police to arrest DeLuca i[s cl]early demonstrated above and the attached exhibits to be untrue. By relying upon this more critical [hea]rsay information, without any apparent effort to confirm its validity, and submitting it in his affida[vit t]o the magistrate judge, the affiant had to know that the court would place great reliance on it before [issu]ing the search warrant in this case. The affidavit having been submitted in the form it was, wheth[er] intentional or not, still amounted to a reckless and egregious misrepresentation of critical facts [to] the magistrate judge upon which he undoubtedly relied in issuing the search warrant in this case.

This court is neither bound nor required to strain to read into the affidavit facts that car[not] reasonably be justified to enhance its validity. The affidavit on its face is questionable, but wh[en] considered with the exhibit evidence attached hereto in support of this motion, it is clearly leg[ally] deficient. There is no more sacred haven under our law than a person's home. A search warra[nt] issued against a person's home must rest on valid facts and on legal principles long established [in] our

7

jurisprudence. A search warrant cannot rely on whimsical and unverified information received from an unnamed confidential informant whose background and credibility are in serious question, nor can its rest upon its legality by the results of the items seized thereby.

Since no facts were provided at all in the affidavit to establish the circumstances how the CI accessed the subject premises to make his/her observations, his/her presence therein is seriously questionable, and the basis of knowledge prong has not been satisfied. Since those facts that were provided in the affidavit attempting to establish the reliability/veracity of the CI were inaccurate and untrue, regardless of any improper intention, the submission recklessly misrepresented the actual facts so that prong was also not satisfied. The validity of a search warrant can only rest upon the validity of the affidavit that procured it. The search warrant in this case should not have been issued and, as, the search was unlawful and all item seized thereunder, or any derivative evidence seized, should be suppressed.

Additionally, based upon incontrovertible evidence presented with this memorandum by way of exhibits questioning the truthfulness of critical information presented in the affidavit, the court should grant the defendant a hearing under Franks v. Delaware.

### LAW

In order for information from an informant cited in an affidavit, which seeks the issuance of a search warrant, the so-called unnamed reliable informant must meet the two-pronged standard of *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed. 2d 637 (1969). In *Commonwealth vs. Upton*, 394 Mass 363 (1985), the Supreme Judicial Court stated, "We conclude that Art. 14 provides more substantial protection to criminal defendants than does the Fourth Amendment in the determination of probably cause." *Id.* at 373

The Supreme Judicial Court adopted the principles developed under *Aguilar-Spinelli* as the standard for probable cause inquiries under Art. 14. Pursuant to the *Aguilar-Spinelli* standard, when an affidavit is based on information from an unknown informant, the magistrate must "be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the *basis of knowledge test*), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the *veracity test*). If the informant's tip does not satisfy each aspect of the Aguilar test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. ***Commonwealth v. Upton***, 390 Mass. at 566.

In the present case, an unnamed informant allegedly tells Agent Mercer that sometime during the third week of January 2002, the informant saw weapons, ammunition and drugs in the Defendant's apartment. It is the Defendant's position that the information supplied to the magistrate was legally deficient so the search warrant should not have been issued.

A detailed review of the contents of the search warrant affidavit will demonstrate that there was insufficient information to establish probable cause. From an overview of the entire affidavit, the following analysis is submitted for the court's consideration. Par. 1 identifies the affiant, but gives no information about the Defendant or the apartment. Similarly, Par's. 1 and 3 do not supply the magistrate with any information about the Defendant or the apartment. In Par.4, the affiant states that he was investigating the Defendant and that he checked to see if the Defendant had a criminal history, but no information is supplied about the apartment. In Par. 5, the affiant states that the Defendant has a criminal history and identifies some of the Defendant's history. Again, no information is given about the apartment.

In addition to the defect in the "Basis of Knowledge" prong, the search warrant affidavit also failed to meet the "Veracity" prong of *Aguilar-Spinelli*. In *Commonwealth v. Hill,* 51 Mass..  ).Ct. 598 (2001) the veracity of an informant was not established. In *Hill*, the Defendant moved to dismiss indictments on drug and ammunition possession charges and to suppress evidence. The Superior Court allowed the option to dismiss indictments and motion to suppress evidence obtained in warrantless search, but denied motion to dismiss evidence obtained from warrant-based search apartment. The Appeals Court ruled that a tip from confidential informant that Defendant was distributing cocaine was unrealizable and did not provide probable cause to stop car, arrest Defendant, and search her car.

In *Hill*, the Springfield police department had, at some unspecified time, received reports from several different, unnamed sources that one side of a two-story duplex house at 16 Gold Street is a distribution point for crack cocaine. Hill and Hightower were allegedly dealing cocaine from the apartment of using a "beeper system" to communicate with customers and delivering cocaine customers in a red Plymouth Neon automobile. Later, a clerk magistrate issued a warrant for the search of the apartment for cocaine and related paraphernalia. During the search of the apartment, police recovered personal papers belonging to Hill along with other evidence including 128 rounds of ammunition, one clip and clip feeder, and one empty gun container.

Applying the *Aguilar-Spinelli,* standards in the *Hill* case, the Appeals Court concluded that the tip from the confidential informant was unreliable. The Appeals Court assumed that the informant's claim to have seen the contraband in the apartment was adequate to satisfy the "Basis of Knowledge" test. The Appeals Court found that the informant's veracity was not established.

The informant in *Hill* failed to indicate when any observed illegal activity had taken place, what exactly had happened, how often (and recently) the informant had observed this activity, what

10

the informant's role in such activity had been. This lack of detail was not an adequate basis to determine whether the information provided by the informant is sufficiently veracious to justify an invasion of Hill's constitutionally protected zone of privacy. 51 Mass.App.Ct. at 607, 608.

The Appeals Court found an even more significant defect of the reliability of the informant's tip in *Hill*. Although the informant in *Hill*. Allegedly had provided useful information on prior occasions, the Commonwealth did not indicated what the nature of that other information was when in what context it had been provided or verified. Further, there was no showing that the information had led to any convictions, seizures or contraband, or even arrests. "Boiler plate" assertions lacking such substantive detail are not adequate to satisfy *Aquilar-Spinelli's* veracity prong.

In *Hill,* police investigations and surveillance failed to corroborate the informant's tip in any meaningful manner. The police had confirmed only that Hill resided at the identified residence, owned or operated a car fitting the informant's description, that Hill some four years earlier had been convicted of possession of cocaine with intent to distribute, and that one known drug user/dealer who had just visited the building was found in possession of cocaine. The police observed no actual drug transactions and at best minimal foot traffic, involving unidentified persons, during their two-week surveillance.

In the present case, the agent confirmed that the Defendant may have lived at the apartment. They confirmed that he received mail at an Everett post office box. They confirmed that he leased a white Cadillac and that he was seen near vehicles identified by the informant. The agent did not observe any weapons or other materials related to weapons. The agent did not observe any activity remotely connected with drug distribution. In fact, the only person observed with the Defendant was a young man who helped the Defendant clean a car in the driveway of the apartment building.

information was commonly available and as consistent with the Defendant's innocence as with criminal activity and does not constitute adequate corroboration under *Aguilar-Spinelli*.

Corroboration of the informant is also not established because of the Defendant's past conduct. In *Hill*, the fact of Hill had a prior drug conviction added nothing corroborative to the informant's story. In sum, the Appeals Court in *Hill*, stated that "nothing observed by or known to the police adequately corroborated in any of the inculpatory assertions attributed to the informant." 51 Mass.App.Ct. 608.

In the absence of adequate corroboration, the informant's tip did not demonstrate sufficient indicia of reliability to give rise to a finding of probable cause to issue the search warrant for the apartment. Disregarding the informant, the affidavit states no facts upon which the magistrate could find probable cause to search the apartment.

*In Commonwealth v. Alfonso A.*, 53 Mass.App.Ct. 279 (2001) a juvenile was adjudicated a delinquent in Boston Juvenile Court for several offenses. The juvenile appealed and the Appeals Court held that the information set forth in affidavit for search warrant was insufficient to show that anonymous informant was credible or information supplied was reliable.

The juvenile filed a motion to suppress evidence from a search is conducted pursuant to warrant. Accordingly, probable cause must be found only on the facts revealed on the face of affidavit and any reasonable inferences therefrom. *Commonwealth v. Germain*, 396 Mass. 413, 415 n. 4 (1985). The affidavit detailed that the affiant was an experienced detective with the Boston Police Department who was seeking a warrant for the second floor residence and other specific areas at 21 Montvale Street, in the Roslindale area of Boston. He had, within the last two hours, received information from an informant, referred to as "X" "whose whereabouts and identity [were] known" to him, but who wished to remain anonymous. "X" told the affiant that he had "observed six rifles three

shotguns, two rifles, and one air pellet rifle" at the locus, and that there were two people currently in the house, one called Ricky who lived there with his parents and the other named Alfonso. The last names were unknown to the informant and he believed that "the parents" (not identified) were not then at home. "X" also told the affiant that Alfonso said "that he took the guns in a Breaking and Entering on the 27th of January, 1999, in West Roxbury." "X" stated that Ricky was going to put the guns in a black bag and place them in the garage, and that Alfonso "was making several phone calls to find a buyer. Alfonso was asking three to four hundred dollars for each weapon and had scheduled a meeting with two prospective buyers later in the evening. The affiant asserted that in fact there had been a breaking and entering at 24 Chestnut Street in the West Roxbury section of Boston, on January 27, 1999 in which three 12 gauge shotguns, two 20 gauge shotguns and a pellet gun were taken.

The Appeals Court again assumed that the informant's statement of seeing the contraband was enough to satisfy the "Basis of Knowledge" test *Aguilar-Spinelli*. The problem was with the veracity of the informant. The Appeals Court found the veracity test lacking for a number of reasons, but one reason was the lack of detail provided by the informant. "The informant did not provide particularized distinguishing characteristics of the …apartment, possessions, or activities." 53 Mass.App.Ct. at 283-284 (quoting *Commonwealth v. Rojas*, 203 Mass. at 487). More importantly, even if the informant had provided more detail, that detail alone would not have been enough to satisfy the veracity prong without some independent police corroboration. See *Commonwealth v. Oliveira*, 35 Mass.App.Ct. 645, 648. In that case, Justice Kaplan, writing for the court, quoted from Stanley v. State, 19 Md.App. 507, 533, 313 A.2d 847 (1974), with approval: "If the informant were concocting a story out of the whole cloth, he could fabricate in fine detail as easily as with rough brush strokes. Minute detail tells us nothing about 'veracity.' "

Although a deficient showing of reliability may be overcome by a strong showing of b[asis] of knowledge, see Illinois v. Gates, 462 U.S. 218, 233 (1983), here no showing was made as to e[ithe]r factor.

Also, the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984) [doe]s not apply here, where the warrant was supported by, at most, a "bare bones" affidavit. Id. at 923-9[24]. See also United States v. Barrington, 806 F.2d 529 (5th Cir. 1986). The good faith exception only [app]lies where reliance on the warrant is objectively reasonable. Leon, 468 U.S. at 922.

Furthermore, the good faith exception does not apply when the magistrate "was misled [by] information in an affidavit that the affiant knew was false or would have known was false exc[ept] for his reckless disregard of the truth." Id. at 923, citing Franks v. Delaware, 438 U.S. 154 (1978[). H]ere, the warrant application contained material false statements and omissions, as outlined above.

In the present case, the informant provides "detail" about the exterior of the apartment building and the common area leading up to the apartment. The informant states that he/she o[bse]rves weapons and drugs in the apartment and that the Defendant is selling drugs from the apartmen[t.] Police observations corroborate the exterior description of the apartment building, but the[re is no] police corroboration of any detail provided by the informant. The police do not observe even [a] situation that could be claimed to have been a drug transaction.

The affidavit presented to the magistrate fails to establish probable cause to search the Defendant's apartment. The informant's information does not satisfy both prongs of the *Agui*[lar]-*Spinelli* test. Without the informant's information, the affidavit does not establish probable c[aus]e at all. The police did not independently hear, observe or investigate any facts that would have corroborated any critical or intimate information that was not provided to them by the CI. Up[on] all the facts and law of this case, there is no reasonable basis to conclude the affidavit was suffici[ent] to

establish either the reliability/veracity prong or the basis of knowledge prong, at least on a seas able basis, regarding the information contained in the affidavit.

Based on the foregoing the entirety of the evidence seized from the second-floor rear apartment at 534 Broadway, Everett, MA, or any derivative evidence obtained as a result of th search, should be suppressed.

September 15, 2005

Karnig Boyajian (BBO#052080)
Defendant's Attorney
One Gateway Center, Suite 315
Newton, MA  02458
Tel. 617-332-222
Fax. 617-332-2221

## CERTIFICATE

I hereby certify a copy of the within memorandum and exhibits referenced therein wer  is date delivered, faxed and/or mailed postage prepaid to AUSA Christopher F. Bator, c/o U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA, 02110.

September 15, 2005

Karnig Boyajian

15