UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )  CRIMINAL NO. 03-10385-RGS
                            )
KIRK RINALDI                )
                            )

   **GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CROSS-EXAMINATION
      OF ATF AGENTS REGARDING ADVERSE CREDIBILITY FINDINGS
             <u>MADE BY JUDGES IN UNRELATED PROCEEDINGS</u>**

The government respectfully moves <u>in limine</u> for an order precluding cross-examination: (1) of Special Agent ("SA") John Mercer of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regarding an affidavit he submitted in an unrelated case, <u>United States v. Brian DeIorio</u>, No. No. 02-10352-REK, and/or the findings of United States District Judge Robert Keeton concerning the accuracy or veracity of said affidavit; and (2) of SA Richard Donahue regarding investigative reports he wrote and testimony he provided in an unrelated case, <u>United States v. Antonio Redrick</u>, 04-10301-MLW, and/or findings by United States District Judge Mark Wolf concerning said reports and testimony.[1]  Inquiry of the

---

[1] SA Mercer was the case agent in the investigation that resulted in the indictment against the defendant in the instant case.  He will be a primary testifying witness regarding the execution of the warrant to search the defendant's apartment that resulted in the seizure of the firearms, ammunition, and heroin that the defendant is charged with unlawfully possessing.  SA Donahue conducted surveillance of the target premises, observing the defendant exit the apartment on an occasion several days before the search as well as on the day of the search itself, and will so testify.  He also participated in the execution of the search warrant, but his testimony as to that would be cumulative of the expected testimony of other witnesses, including SA

agents regarding whether, in the earlier cites cases, either wrote a misleading, inaccurate, or false report or affidavit, or provided inaccurate or untruthful testimony, would be of limited probative value, as both would deny doing so, and Fed. R. Evid. 608(b)'s prohibition on the introduction of extrinsic evidence to prove a specific prior instance of conduct bearing on a witness' character for veracity precludes not just introduction of the judges' findings, but any questioning of the agents about such findings.

## Factual Background

**A.   SA Mercer and the _DeIorio_ Case**

SA Mercer was previously involved in the prosecution of Jeffrey North for distribution of marijuana (Criminal No. 98-10176-GAO).  In connection therewith, Mark Petraglia, an ATF informant for whom SA Mercer served as "handler," testified for the government at trial.  During the course of his informant activities, Petraglia identified Greg Adams and Brian DeIorio as members of a marijuana organization with which he dealt.

On December 12, 2001, after the North trial had concluded and North had been convicted, a violent physical altercation occurred between Petraglia and DeIorio in Saugus, Massachusetts. Later that same day, SA Mercer, after having been called by Petraglia, interviewed Petraglia in the emergency room of the

---

Mercer, and therefore it is unlikely to be elicited at trial.

Melrose-Wakefield Hospital. He observed bruises and lacerations on Petraglia's face, head, hand, and torso. He took a statement from Petraglia, who reported, among other facts, that DeIorio had instigated the fight and had done so after stating "what's this shit, I heard you were a CI for the feds . . . and you brought my name into it."

Two days later, after SA Mercer had conducted several additional interviews, and had indisputably confirmed that DeIorio had viciously beaten Petraglia, SA Mercer signed an affidavit in support of a criminal complaint charging DeIorio with obstruction of justice (retaliation toward a cooperating witness), in violation of 18 U.S.C. § 1513(b)(2) (Criminal No. MJ-01-M-320-JLA). DeIorio was subsequently indicted for the same charge (Criminal No. 02-10032-DPW)). When DeIorio was arrested, his vehicle was searched and 50 pounds of high-quality marijuana worth approximately $50,000 was seized. That marijuana became the subject of a second, separate prosecution of DeIorio, for possession of marijuana with intent to distribute (Criminal No. 02-10352-REK).

The prosecutions of DeIorio were hotly contested. DeIorio acknowledged that he had been in a fight with Petraglia, but denied making the statement attributed to him by Petraglia that provided federal jurisdiction over what would otherwise have been a state assault and battery case. The obstruction of justice

indictment was dismissed by the government before trial. In the drug case, DeIorio attacked the seizure of the drugs from his car. As the seizure was made as part of the search incident to arrest in the obstruction of justice case, DeIorio attacked his arrest in that case in order to taint the subsequent search, and thereby obtain suppression of the seized marijuana. He did so by moving for a Franks hearing, claiming that SA Mercer's complaint affidavit contained information he either knew to be false, or that by material omissions he failed to provide the magistrate judge with sufficient information to responsibly evaluate the proffered showing of probable cause.

Both parties provided the court with extensive written submissions, and on October 28, 2003 Judge Keeton heard argument, but took no testimony, on whether a Franks hearing should be held. At the conclusion of the argument, Judge Keeton rejected the government's request that he review the written submissions before determining whether an evidentiary hearing was necessary. Judge Keeton then stated the following:

> One, I find beyond genuine dispute that Agent Mercer's affidavit before Magistrate Judge Alexander was misleading.
>
> Now, I did not say "deliberately misleading." I find beyond genuine dispute that it was misleading; and in the context it therefore, in my present view of the applicable law, constituted a fraud on the court. Agent Mercer did know that he did not know whether the picture he was presenting was true. He knew that it was probably false, and he deliberately did not disclose that to Magistrate Judge Alexander.

4

>       Now, second, I cannot determine that Magistrate
>  Judge Alexander could have and would have made the
>  findings she made and issued the warrant if Mercer had
>  provided an entirely truthful and correct affidavit.  I
>  therefore allow an evidentiary hearing because I need
>  it before I can properly make a final decision on the
>  Franks motion and the motion to suppress.

[October 28, 2003 Motion Hearing, pp. 62-63].

The Franks hearing was never held.  DeIorio pled guilty to a lesser charge of possession of marijuana, in violation of 21 U.S.C. § 844(a), and the government dismissed the original indictment.

### B.  SA Donahue and the Redrick Case

SA Donahue was previously involved in the prosecution of Antonio Redrick for firearms offenses relating to his possession of a duffle bag from which a sawed-off shotgun was recovered (Criminal No. 04-10301-MLW).  In January 2005, after Redrick had been indicted, he produced an affidavit from one Eddie Ray, who had been incarcerated with him.  In the affidavit, Ray asserted that he had had a conversation with an ex-girlfriend of Redrick's in which she suggested that she had framed Redrick.  Redrick's defense attorney provided the Ray affidavit to the prosecutor, suggesting in writing that his office "should investigate these allegations."  As it turned out, the affidavit was false and Redrick effectively conceded as much when he pled guilty to the firearms offenses in February of 2006.

However, before doing so, Redrick moved to dismiss the case

against him on the grounds that the government had denied him due process by harassing or intimidating Eddie Ray into denying the truth of his original affidavit.  This accusation arose out of a June, 2005 interview of Eddie Ray conducted by SA Donahue in the presence of ATF SA Philip Ball.  At the outset of that interview, SA Donahue told Ray that Redrick had pled guilty (which was not true) and that he was interested in determining whether Ray's affidavit was false, as he suspected it to be.  Ray readily recanted his sworn affidavit and completed a second handwritten affidavit, in which he stated that he had signed the original affidavit, which had been drafted by Redrick, as a favor to Redrick.  When this second affidavit was provided to Redrick's defense counsel, the latter went to see Ray and then reported back to the prosecutor that Ray was now standing by his original affidavit.  SA Donahue and another ATF agent went to see Ray again in July, 2005, at which time Ray accused SA Donahue of having lied to him at their previous meeting.  Ray insisted that he had never lied in either affidavit, notwithstanding the fact that they were in patent conflict with one another.

    Judge Wolf held hearings in February, 2006 on whether the government had engaged in misconduct by intimidating Ray from providing testimony favorable to Redrick and/or by failing to grant Ray immunity.  At the February hearings, SA Donahue testified that he had Mirandized Ray at the outset of their June,

2005 interview, whereas SA Ball testified that he did not recall if SA Donahue had done so.  Judge Wolf found that "contrary to the testimony of Agent Donahue, they didn't give [Ray] Miranda rights . . . ."  Judge Wolf also found that SA Donahue's reports of his two meetings with Ray were "materially incomplete and misleading," stating:

> The ATF reports of the interviews are materially incomplete and misleading.  For example, the June report does not divulge that the ATF agents told Mr. Ray that Mr. Redrick had pled guilty.  They do not disclose that they told him that they knew his original affidavit was "bullshit," meaning false.  It doesn't -- they don't write down that they told him he could be prosecuted.  And I would infer that they weren't' measured, but probably said something to him that intentionally caused him to understand he would be prosecuted for perjury if he didn't recant.  I can pull out the exhibit [i.e., SA Donahue's report of his June 2005 interview of Ray], but I think it says that he – you know, they went in, they said they wanted to talk to him, and he immediately told them that his original affidavit was false.  That's just misleading.  It's undisputed that it's misleading.  Donahue's affidavit [submitted in support of the government's opposition to Redrick's motion to dismiss] makes it clear it's misleading.

[February 3, 2006 Motion Hearing, pp. 6, 8].

### Discussion

By its terms, Fed. R. Evid. 608(b) invests a trial court with discretion to permit a party to cross-examine a witness about specific instances of conduct on the witness' part that is probative of the witness' character for truthfulness or untruthfulness, but such conduct may not be proved by extrinsic evidence.  Rule 403 invests the court with discretion to preclude

such cross-examination, even if the evidence to be elicited would otherwise be relevant, if the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.

In the instant case, pursuant to Rule 608(b), the Court could permissibly allow the defendant to cross-examine SA Mercer about whether he made intentionally misleading statements in the affidavit he submitted in the DeIorio case and SA Donahue about whether he submitted misleading and incomplete reports in the Redrick case and/or testified falsely at a hearing regarding his provision of Miranda rights to an interviewee.  If that were to occur, both agents would emphatically deny the accusation and the defendant would have to accept the denial.  The defendant could not permissibly inquire about whether Judges Keeton or Wolf had made findings contrary to those denials, for to do so would run afoul of Rule 608(b)'s proscription on the introduction of extrinsic evidence.  That this is so is made clear by the Advisory Committee's notes regarding the 2003 amendments to that rule, in which it stated:

> It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act.  For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness.  *See United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999) (emphasizing that in attacking the defendant's

>character for truthfulness "the government cannot make
reference to Davis's forty-four day suspension or that
Internal Affairs found that he lied about" an incident
because "[s]uch evidence would not only be hearsay to
the extent it contains assertions of fact, it would be
inadmissible extrinsic evidence under Rule 608(b)").
*See also* Stephen A. Saltzburg, *Impeaching the Witness:
Prior Bad Acts and Extrinsic Evidence*, 7 Crim. Just.
28, 31 (Winter 1993) ("counsel should not be permitted
to circumvent the no-extrinsic-evidence provision by
tucking a third person's opinion about prior acts into
a question asked of a witness who has denied the act").

Fed. R. Evid. 608, Advisory Committee Notes, 2003 Amendments.

It is clear from the foregoing that the defendant in the instant case cannot permissibly question SA Mercer about Judge Keeton's findings in the DeIorio case or SA Donahue about Judge Wolf's findings in the Redrick case. If it is equally clear that, if directly queried as to whether in those cases either agent had, intentionally or otherwise, authored any false or misdealing reports or provided any untruthful testimony, both would emphatically deny having done so, the question becomes, what purpose would be served by permitting such questions to be put to them?[2] Allowing that line of inquiry would have the effect of placing the allegation of prior dishonesty or deception before the jury with no evidence on which the jury could properly rely to support it. In such circumstances, the court is

---

[2] If it were so inclined, the Court could conduct a brief voir dire of both agents outside of the jury's presence to confirm the government's representation as to how SA Mercer and SA Donahue would respond if asked about their conduct in the DeIorio and Redrick cases.

warranted under Rule 403 in prohibiting such inquiry.

The Third Circuit's decision in United States v. Crowley, 318 F.3d 416-417 (2d Cir. 2002), is instructive. There two defendants were charged with sexual assault of a fellow midshipman at the Merchant Marine Academy in Kings Point, New York. Id. at 404-405. At trial, the defendants sought to cross-examine the victim, a woman named Stephanie Vincent, about alleged prior instances in which she had made false accusations about against other classmates. Id. at 416. During a voir dire, the judge allowed defense counsel to "direct Vincent's attention to certain named students or certain particular incidents, and to ask Vincent whether she had ever 'lie[d] about what happened' in those instances or 'falsely accuse[d]' the students involved," but counsel were not permitted "to ask questions that explored in any detail what Vincent told the authorities in these cases or what the results of any official inquiry had been." Id. at 416-417. After the victim denied in each instance lying or making false accusations, the judge declined to permit any cross-examination on the subject. Id. at 417. On appeal, the Second Circuit affirmed the judge's ruling. Although it recognized that "the questions defendants proposed to ask, which related to alleged instances of false accusation, were certainly relevant to the witness's credibility," and that there was a good faith basis for posing the questions, and although it further observed that

it might have taken a different course, it concluded that the trial judge had not abused his discretion.  In so doing, it reasoned:

> The voir dire examination established that Vincent would deny making false accusations or lying in connection with Academy investigations.  Since the defense would be precluded by Rule 608(b) from attempting to refute Vincent's testimony by offering extrinsic evidence concerning the incidents in question, the only evidence before the jury on the subject would have been Vincent's denial of falsehood.
>
> Allowing cross-examination before the jury would thus have produced little of probative value.  Certainly, the trial court was well within its discretion in not allowing any broader inquiry into the nature of what Vincent had told the authorities and what the results of their investigations (to the extent Vincent even knew of them) had been.  Such broad-ranging inquiry would at best have produced confusing and distracting sideshows regarding the facts of controversies completely unrelated to the charges against Crowley at trial, and was properly precluded.  It was thus also within the trial judge's broad discretion in regulating cross-examination to conclude that since the most that would be permitted was questioning about whether Vincent had lied, to which the defendants would get negative answers, the prejudicial impact of engendering speculation about the subject outweighed the minimal probative value of permitting the jury to evaluate Vincent's demeanor during the question and answer.

Id. (citations omitted).[3]

---

[3] The appeals court did state that its view of the propriety of the trial judge's ruling was bolstered by the fact that the judge's in camera review of the victim's Academy file disclosed that there had been no findings that any prior allegations on her part were false.  318 F.3d at 418.  The Second Circuit viewed the records as supporting the judge's determination that "permitting the defense to suggest that Vincent had lied to Academy officials would be more prejudicial than probative."  Id.

Significantly, the First Circuit appears to be of a like view. In <u>United States v. Lopez</u>, 944 F.2d 33 (1st Cir. 1991, the defendant, much like the defendant in the instant case, was charged with drug offenses arising out of the execution of a warrant to search her apartment. <u>Id</u>. at 35. At trial, she sought to cross-examine a testifying police officer about his testimony in an unrelated federal case in which a different judge had granted a motion for a new trial in part because the judge had not believed the officer's testimony. <u>Id</u>. at 37. The First Circuit affirmed the trial judge's preclusion on Rule 403 grounds of such cross-examination. <u>Id</u>. at 38. It noted that its review was hampered by the absence of an offer of proof by the defendant as to the nature of the intended cross-examination. <u>Id</u>. It then stated:

> Moreover, the record is far from clear as concerns what would have been asked of the officer on cross-examination. On the one hand, the district court expressed the view that it would be permissible to ask the officer whether he had testified untruthfully at the earlier trial, but that if the officer responded in the negative no extrinsic evidence could be introduced to demonstrate otherwise, particularly not the credibility opinion of the judge who presided at the earlier trial. On the other hand, the district court precluded this "permissible" cross-examination of the officer as well, apparently on the assumption that the officer would not admit that he had given untruthful testimony at the earlier trial. There is no indication that appellant requested an opportunity to voir dire the officer out of the presence of the jury to

12

ascertain his response.

Our review of the record indicates that the district court thus conclude3d that there was little utility in permitting the officer to be asked whether he had given untruthful testimony at the other trial, since no extrinsic evidence could be introduced to rebut his anticipated denial. *See* Fed. R. Evid. 403 & 608(b). Moreover, while potentially probative of the trustworthiness of the officer's testimony, the credibility assessment made by the presiding judge at an unrelated trial would have entailed grave risk that the jury might abnegate its exclusive responsibility to determine the credibility of the testimony given by the officer at appellant's trial.

<u>Id</u>.[4]  <u>See also</u> <u>United States v. Cruz</u>, 894 F.2d 41, 43 (2d Cir.

---

[4]In <u>United States v. Whitmore</u>, 359 F.3d 609 (D.C. Cir. 2004), the D.C. Circuit purported to distinguish <u>Lopez</u>, but in essence it rejected the First Circuit's rationale in the latter case. The court in <u>Whitmore</u> reversed a conviction because, in part, of the trial judge's preclusion of cross-examination of the arresting officer regarding a state court judge's express finding that the officer had lied when testifying before that judge in an earlier proceeding. The trial judge had reasoned that the probative value of the potential cross-examination was slight because it involved an unrelated and dated matter and fell short of a perjury conviction. <u>Id</u>. at 619. Relying on <u>Lopez</u>, the judge had then prohibited the cross-examination based on Rule 403, concluding that it presented a grave danger that the jury would abdicate its role in assessing the officer's testimony and that the cross-examination and the government's attempted rehabilitation would divert the jury from the facts in the case at hand. <u>Id</u>. The court of appeals disagreed, stating that "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness had previously lied under oath," and concluding that the trial judge's total rejection of the proposed cross-examination on 403 grounds was unjustified because, via limiting instructions and the imposition of limitations on the scope of the examination and any rehabilitation, the judge could have alleviated any concerns about unfair prejudice or delay. <u>Id</u>. <u>Whitmore</u> is plainly at odds with <u>Lopez</u>. Moreover, it seems implicit in the court's ruling that it believed that the defendant was entitled to question the arresting officer about the state court judge's finding that he had lied. In that regard, it is also at odds

1990) (affirming district court's refusal to allow defense counsel to cross-examine government witness about an earlier judicial finding in unrelated case that witness lacked credibility); Nipper v. Snipes, 7 F.3d 415, (4th Cir. 1993)("judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice")(internal quotes and citations omitted).

In sum, Rule 608(b)'s prohibition against the introduction of extrinsic evidence regarding specific instances of prior conduct offered to attack a witness' character for veracity renders impermissible any inquiry of SAs Mercer and Donahue regarding the findings of Judges Keeton and Wolf in the DeIorio and Redrick cases. Although direct inquiry of the officers about their conduct in those cases is theoretically permissible if directed to matters pertaining to their truthfulness, because they would deny engaging in any acts of dishonesty, there is no appreciable probative value to any such cross-examination and it too should therefore be precluded.

Even if Rule 608(b) did not preclude inquiry of a witness regarding a prior judicial finding that the witness had lied, Rule 403 would militate against permitting cross-examination of

---

with the commentary to the 2003 amendments to Rule 608(b). Although those amendments and the associated commentary predated the court's decision, the court made no reference to them.

SAs Mercer and Donahue regarding the judges' findings about their conduct in the DeIorio and Redrick cases.  Because there is a significant question as to the propriety of those findings, their probativity is low and the danger of unfair prejudice is high.

With respect to the DeIorio case, without holding an evidentiary hearing, and without hearing any testimony from SA Mercer, Judge Keeton made certain findings about what SA Mercer knew and did not know when he signed the complaint affidavit in that case.  In the absence of such a hearing, those findings cannot fairly be deemed a supportable assessment of the credibility of SA Mercer's affidavit.  In addition, those findings were ambiguous and inconsistent, and on that basis as well they have scant relevance.  On the one hand, Judge Keeton found "beyond genuine dispute" that SA Mercer's affidavit was misleading, but not "deliberately misleading."  But he then inexplicably concluded that SA Mercer knew that "the picture he was presenting . . . was probably false, and he deliberately did not disclose that to Magistrate Judge Alexander."  It is not even clear from the record what Judge Keeton ultimately concluded as to whether SA Mercer filed an intentionally misleading affidavit.  Accordingly, cross-examination of SA Mercer regarding the judge's findings would invite undue confusion and speculation.  It should therefore be precluded under Rule 403.

With respect to the <u>Redrick</u> case, Judge Wolf did not expressly find that SA Donahue had lied about providing Miranda rights to Eddie Ray, but he instead chose to credit the conflicting testimony of SA Ball that no rights were given. Even if SA Donahue's testimony was inaccurate on that point, and it is not clear that it was, that does not mean that that was a consequence of anything other than mistake or faulty memory. That being so, the relevance of the judge's finding is quite low, while the likelihood that the jury would give the finding undue weight is great. Here again, Rule 403 considerations support a prohibition upon any cross-examination about that finding.

Likewise with respect to Judge Wolf's conclusion that SA Donahue prepared incomplete and misleading reports. The government understands that finding to have largely been based on the fact that the affidavit submitted by SA Donahue in opposition to Redrick's motion to dismiss (which was eight pages long) contained details of the two interviews with Ray that were not reflected in the contemporaneous and abbreviated reports themselves. SA Donahue's reports were not intended, however, to be comprehensive or verbatim accounts of those events, but rather more truncated summaries. As such, in the government's view, they fall within the range of acceptable and professional report-writing expected of federal agents. Notably, the additional details contained in SA Donahue's subsequent affidavit were not

16

inconsistent with the substance of the prior reports.  The government thus contends that the judge's conclusion that the reports were incomplete and misleading was a subjective determination on his part and one with which others might reasonably disagree.  As such, it is of limited probativity as to SA Donahue's character for truthfulness.  At the same time, it presents a significant danger that it would be accorded inordinate and unwarranted significance by the jury in its assessment of the agent's credibility.

## Conclusion

For the above stated reasons, this Court should allow the government's motion in limine and preclude any questioning of SA John Mercer about his involvement in the DeIorio case or Judge Keeton's findings about such involvement, and preclude any questioning of SA Donahue about his involvement in the Redrick case or Judge Wolf's findings about such involvement.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

By:  /s/ James Lang
     JAMES LANG
     LISA ASIAF
     Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be sent to those indicated as non-registered participants.

                                          /s/ James Lang
                                          James Lang
                                          Assistant U.S. Attorney

Date: July 11, 2007